UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

VERANIQUE FORD,

        Plaintiff,

v.                                        Case No. 8:20-cv-1174-T-MAP

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

_____/

## **ORDER**

This is an appeal of the administrative denial of supplemental security income (SSI).[1] *See* 42 U.S.C. § 1383(c)(3).   Plaintiff contends that the Appeals Council (AC) erred in considering treatment records Plaintiff submitted to the agency after the administrative law judge's (ALJ) decision.   After considering Plaintiff's argument, Defendant's response, and the administrative record (docs. 16, 24, 27), I find the ALJ applied the proper standards, and the decision that Plaintiff is not disabled is supported by substantial evidence.   I affirm the ALJ's decision.

### *A.   Background*

Plaintiff Veranique Ford was born on May 11, 1974, and was 44 years old on the date of the ALJ's decision. (R. 122)   Plaintiff has a limited education – she could not remember if she dropped out of school in the sixth, seventh, or eighth grade, but she knows she did not graduate – and she can only read and write simple sentences. (R. 120, 125) On the hearing date, she was homeless after breaking up with her boyfriend and getting kicked out of his

---

[1] The parties have consented to my jurisdiction.  *See* 28 U.S.C. § 636(c).

house. (R. 121-22, 130)  She grew up in foster care and has three adult children. (R. 129, 418)  She testified she sometimes takes care of her toddler granddaughter, but otherwise there is no mention of her family in the record. (R. 418)  During her consultative psychological examination on May 22, 2017, Plaintiff told Peter Bursten, Ph.D. she was married for two weeks 24 years ago. (*Id.*)  She has a history of arrests for drug possession, aggravated battery, aggravated battery with a deadly weapon, and driving without a license. (*Id.*)  She acknowledges her short fuse:  in Plaintiff's words, "my patience is short cause the streets raised me." (R. 95)  Plaintiff has no past relevant work. She alleges disability beginning January 3, 2017, due to chronic back and shoulder pain.

After a hearing, the ALJ found that Plaintiff suffers from the severe impairments of "cervical disc disease; lumbar disc disease; left shoulder bursitis with rotator cuff tear; dysfunction, left hip; history of limited education and learning disorder; paroxysmal supraventricular tachycardia (SVT); and personality disorder." (R. 90)  Aided by the testimony of a vocational expert (VE), the ALJ determined Plaintiff is not disabled, despite these impairments, as she retains the residual functional capacity (RFC) to perform light work with these limitations:

> Except pushing and pulling with the bilateral lower extremities and the left upper extremity is limited to frequent; never climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; no more than occasional exposure to extreme temperatures, humidity, vibration, and workplace hazards, such as unprotected heights and moving machinery.  She can understand, remember, and carry out simple, routine, and repetitive tasks and instructions within jobs that can be learned by visual demonstration, and do not require complex written or verbal communication in English.  Interactions with supervisors and co-workers are limited to frequent, and interactions with the general public are limited to occasional.

(R. 92)  The ALJ found that, with this RFC, Plaintiff could work as a cafeteria attendant, a car wash attendant, and a photocopying machine operator. (R. 99)

On March 15, 2019, after her January 30, 2019 administrative hearing but before the ALJ's April 3, 2019 written decision, Plaintiff was in a car accident.  She sought treatment at St. Joseph's Hospital's ER and Premier Miller Orthopedic Centers shortly after the accident but was not able to submit these treatment records to the agency until after the ALJ's decision. In total, Plaintiff submitted the following treatment records to the AC:  records from Premier Miller Orthopedic Centers dated March 26, 2019 (R. 104-06); ER records dated March 15 and 16, 2019 (R. 108-15), and December 2 through December 4, 2019 (R. 17-35); records from chiropractor Martin Underwood, P.C. from April 26, 2019, through May 14, 2019 (R. 73-85); inpatient treatment notes from Gracepoint, a mental health care provider in Tampa, for her August 27, 2019, through August 29, 2019 hospitalization for crisis stabilization (R. 40-67); and a December 16, 2019 Tower Radiology brain MRI report (R. 10).  Some of these records pre-date the ALJ's written decision and some post-date it.  The AC found that these treatment records would not change the ALJ's decision and denied review. (R. 2) Plaintiff, her administrative remedies exhausted, filed this action.

B.  *Standard of Review*

To be entitled to SSI, a claimant must be unable to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  *See* 42 U.S.C. § 1382c(a)(3)(A).  A "'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological

abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *See* 42 U.S.C. § 1382c(a)(3)(D).

The Social Security Administration, to regularize the adjudicative process, promulgated detailed regulations that are currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. *See* 20 C.F.R. § 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 416.920(a)(4). Under this process, the Commissioner must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment(s) (*i.e.*, one that significantly limits her ability to perform work-related functions); (3) whether the severe impairment meets or equals the medical criteria of Appendix 1, 20 C.F.R. Part 404, Subpart P; (4) considering the Commissioner's determination of claimant's RFC, whether the claimant can perform her past relevant work; and (5) if the claimant cannot perform the tasks required of her prior work, the ALJ must decide if the claimant can do other work in the national economy in view of her RFC, age, education, and work experience. 20 C.F.R. § 416.920(a)(4). A claimant is entitled to benefits only if unable to perform other work. *See Bowen v. Yuckert*, 482 U.S. 137, 142 (1987); 20 C.F.R. § 416.920(f), (g).

In reviewing the ALJ's findings, this Court must ask if substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The ALJ's factual findings are conclusive if "substantial evidence consisting of relevant evidence as a reasonable person would accept as adequate to support a conclusion exists." *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citation and quotations

4

omitted).  The Court may not reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds the evidence preponderates against the ALJ's decision.  *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  The Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066 (citations omitted).

### C.  Discussion

#### 1.  Evidence submitted to AC

Plaintiff's sole argument is that the AC erred in its consideration of the new evidence Plaintiff submitted after the ALJ's decision.  The new evidence consists of records from her orthopedist (R. 104-06) and chiropractor (R. 73-85), ER records (R. 17-35), a brain MRI (R. 10), and mental health treatment records from an inpatient stay. (R. 40-67)  Some pre-date the ALJ's written decision (but post-date Plaintiff's administrative hearing) and some do not.  Plaintiff submitted both sets of records to the agency after the date of the ALJ's decision.

A claimant may present evidence at each stage of the administrative process.  *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007).  If a claimant presents evidence after the ALJ's decision, the Appeals Council must consider it if it is new, material, and chronologically relevant.  20 C.F.R. § 416.1470(b); *see also Washington v. Soc. Sec. Admin.*, 806 F.3d 1317, 1320 (11th Cir. 2015).  Evidence is material if a reasonably possibility exists that the evidence would change the administrative result.  *Washington*, 806 F.3d at 1321.  New evidence is chronologically relevant if it "relates to the period on or before the date of the [ALJ's] hearing decision." 20 C.F.R. § 416.1470(b).  The Appeals Council must grant the

petition for review if the ALJ's "action, findings, or conclusion is contrary to the weight of the evidence," including the new evidence. *Ingram*, 496 F.3d at 1261 (quotation marks omitted); *see also Smith v. Soc. Sec. Admin.*, 272 F. App'x 789, 800-01 (11th Cir. 2008) (*per curiam*). In other words, a claimant seeking remand under sentence four of 42 U.S.C. § 405(g) "must show, in light of the new evidence submitted to the Appeals Council, the ALJ's decision to deny benefits is not supported by substantial evidence in the record as a whole." *Timmons v. Comm'r of Soc. Sec.*, 522 F. App'x 897, 902 (11th Cir. 2013).

Here, there is substantial support for the AC's finding that the new evidence would not have changed the ALJ's result. The AC, in denying Plaintiff's request for review, stated:

> You submitted treatment notes from Premier Miller Orthopedic Centers, Inc., dated March 19, 2019 through March 26, 2019 (4 pages) and St. Joseph's Hospital dated March 15, 2019 through March 16, 2019 (8 pages). We find this evidence does not show a reasonable probability that it would change the outcome of the decision. We did not exhibit this evidence.
>
> You submitted treatment notes from W. Martin Underwood, P.C., dated April 26, 2019 through May 14, 2019 (12 pages) as well as Gracepoint treatment notes dated August 27, 2019 through August 29, 2019 (32 pages); and Tower Radiology notes dated December 16, 2019 (3 pages). You also submitted treatment notes from St. Joseph's Hospital dated December 2, 2019 through December 4, 2019 (25 pages). The [ALJ] decided your case through April 3, 2019. This additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before April 3, 2019.

(R. 2) Although Plaintiff seeks more of an explanation, the AC is required to consider new evidence but is not required to explain its decision when denying review. *See* 20 C.F.R. §§ 416.1467, 416.1470; *Burgin v. Comm'r of Soc. Sec.*, 420 F. App'x 901, 903 (11th Cir. 2011) ("because a reviewing court must evaluate the claimant's evidence anew, the AC is not required to provide a thorough explanation when denying review").

Regarding St. Joseph's ER records and Plaintiff's orthopedic visit following her March 2019 car accident – treatment she received before the ALJ issued her written decision – these records show she was a seat-belted passenger in a car that was rear ended. (R. 108-15) She went to the ER a few hours after the accident with back and neck pain.  Her range of motion in her back was normal, and she had full strength in her bilateral extremities. (R. 110) Nicholas Turman, M.D. ordered cervical and lumbar spine x-rays, which were normal. (*Id.*) Plaintiff's degree of pain was characterized as "minimal"; she was discharged the same day. (R. 108)  On March 26, 2019 Plaintiff treated with Murthy Ravipati, M.D. at Premier Miller Orthopedic Centers for back, neck, and shoulder pain. (R. 104-06)  Dr. Ravipati diagnosed Plaintiff with cervical, lumbar, and shoulder strains/sprains, muscle spasms, and pain and recommended two weeks of physical therapy. (*Id.*)  He did not opine on the severity of Plaintiff's impairments.  Drs. Turman and Ravipati did not note any functional limitations related to her back and neck pain, and their treatment was conservative.   While chronologically relevant, these records do not warrant a remand to the agency; the ALJ considered Plaintiff's back impairments as reported by consultative examiner Eniola Owi, M.D. in May 2019 (the only other medical record during the relevant time period concerning her back pain) and concluded Plaintiff can perform light work with limitations. (R. 94, 410-14) There is no reasonable probability that these additional records would have changed the ALJ's decision.  There is nothing in these records to support Plaintiff's argument that the car accident worsened her impairments during the relevant time period such that the ALJ's decision is not supported by substantial evidence.

Turning to Plaintiff's ER records, brain MRI, the records of her inpatient stay at Gracepoint, and her chiropractic treatment notes – all treatment Plaintiff received after the ALJ's decision – they are neither new nor material.  To be sure, evidence may be chronologically relevant even if it post-dates the ALJ's decision.  For instance, in *Washington*, 806 F.3d at 1322, the Eleventh Circuit considered an examining psychologist's opinions to be chronologically relevant "even though [the psychologist] examined [the claimant approximately seven] months after the ALJ's decision."  The psychologist had reviewed the claimant's treatment records from the period before the ALJ's decision; the claimant had told the psychologist he had suffered from the conditions "throughout his life" (which obviously included the relevant time period); and there was "no assertion or evidence" that the claimant's condition worsened "in the period following the ALJ's decision."  *Id*.; *see also Wordsman v. Berryhill*, 2019 WL 1349821, at *4-5 (M.D. Fla. Mar. 26, 2019) (remanding to the Commissioner for reconsideration of evidence submitted to the AC for the first time; evidence that post-dated relevant period by four months).

On the other hand, in *Stone v. Commissioner of Social Security Administration*, 658 F. App'x 551, 555 (11th Cir. 2016), the Eleventh Circuit found the circumstances "significantly different" from those present in *Washington*.  The records in *Stone* "demonstrate[d] a worsening" of the relevant symptoms after the ALJ's decision.  *Id*.  And in *Hargress v. Commissioner of Social Security Administration*, 883 F.3d 1302, 1309-10 (11th Cir. 2018), the Eleventh Circuit found that progress notes post-dating the ALJ's decision did not "relate to the period before the ALJ's . . . decision" and "nothing in these new medical records indicates the doctors considered [the claimant's] past medical records or that the information in them

8

relates to the period at issue, which materially distinguishes this case from *Washington*." *Id.*; *see also Smith*, 272 F. App'x at 801-02 (affirming district court's decision; new evidence submitted to AC did "not establish a likelihood that the ALJ would have reached a different result," in part because they post-dated the ALJ's decision by between four and eight months). Evidence that a condition the ALJ previously considered has deteriorated may entitle a claimant to benefits under a new application, but it is not probative of whether a person is disabled during the specific period under review. *Wilson v. Apfel*, 179 F.3d 1276, 1279 (11th Cir. 1999); *see also Griffin v. Comm'r of Soc. Sec.*, 723 F. App'x 855, 858 (11th Cir. 2018) (finding MRI report prepared four months after ALJ's decision not chronologically relevant or material as there was no indication report related back to the relevant time period).

I find this case more like *Stone* and *Hargress* and less like *Washington*. About a month after seeing orthopedist Dr. Ravipati (and after the ALJ's decision), Plaintiff had a series of five appointments with chiropractor Martin Underwood. (R. 73-85)  He treated her for chronic back pain, a thoracic and lumbar sprain/strain, shoulder pain, and muscle spasms. (R. 75)  Dr. Underwood does not indicate whether he reviewed any of Plaintiff's past medical records in fashioning her treatment plan.  Plaintiff told him she felt better after treatment, and she had her last appointment mid-May 2019. (R. 83)  The next set of records is from Gracepoint, a mental health treatment center where Plaintiff stayed from August 27, 2019 through August 29, 2019. (R. 40-67)  She checked herself in with a blood alcohol level of .192 and admitted to suicidal thoughts. (R. 40)  She also admitted to overdosing on pain pills three months earlier in a suicide attempt.  She said memory issues kept her from working. (*Id.*)  Philip Wasef, M.D. diagnosed her with depression, anxiety, PTSD, and psychosis. (R. 41)

9

Plaintiff told him that she did not want medication and did not want to know her diagnosis. (R. 50)  She was stabilized and discharged after two days. (R. 45)

Next are hospital records from St. Joseph's for December 3, 2019, through December 4, 2019. (R. 17-35)  Plaintiff reported to the ER with chest pain and was diagnosed with recurrent paroxysmal supraventricular tachycardia (PSVT) (a type of arrhythmia), which she said occurred approximately two to three times a month and required an ER visit to resolve. (R. 17, 21)  She was not on any medication for her condition. (R. 21)  X-rays revealed no acute pulmonary disease, and doctors restored her normal sinus rhythm.  Cardiologist Douglas McFadden, M.D. recommended a catheter ablation for longer term relief. (R. 25)  Plaintiff agreed, and Dr. McFadden performed the surgery successfully the next day, December 4, 2019, and she was discharged. (*Id.*)  Lastly, Plaintiff had a brain MRI on December 16, 2019, that showed mild volume loss and chronic white matter changes as well as ischemic changes that were seen on a previous MRI. (R. 10)  There is no indication in any of these records that they relate to the period at issue.  Additionally, the ALJ considered Plaintiff's PSVT to be among her severe impairments.  Dr. McFadden's notes show that the catheter ablation – Plaintiff's first ever treatment for the condition – was successful.

The AC considered the additional evidence Plaintiff submitted and found the records were not chronologically relevant or likely to change the ALJ's decision.  My review of them confirms that substantial evidence supports the AC's decision to deny review.

*D.  Conclusion*

For the reasons stated above, it is ORDERED:

(1) The ALJ's decision is AFFIRMED; and

10

(2) The Clerk of Court is directed to enter judgment for Defendant and close

the case.

DONE and ORDERED in Tampa, Florida on August 23, 2021.

MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE